UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| STACY MELTON | ) | |
| | ) | |
| v. | ) | NO. 2:06-cv-55 |
| | ) | |
| HOWARD CARLTON, Warden | ) | |

**MEMORANDUM OPINION**

Stacy Melton, a state prisoner in the Northeast Correctional Complex in Mountain City, Tennessee, brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petitioner is challenging the legality of his confinement under various Greene County, Tennessee convictions. The Attorney General for the State of Tennessee has filed an the answer to the petition on behalf of the respondent and has also submitted copies of the state court record. [Docs. 6 and 7, Addenda 1-8].

**I. Procedural Background**

On May 28, 2004, upon his pleas of guilty, the petitioner was convicted in the Greene County Criminal Court of one count of especially aggravated kidnapping and one count of attempted second degree murder. No appeal was taken.

The petitioner filed a post-conviction petition on November 1, 2004, which the trial court denied. The Tennessee Court of Criminal Appeals affirmed the lower court's decision and the Tennessee Supreme Court declined permission for further review. *Melton*

*v. State*, E2005-00206-CCA-R3-PC, 2005 WL 2922320 (Tenn. Crim. App. Nov. 4, 2005), *perm. to app. denied* (Tenn. Jan. 30, 2006).

He now brings this instant petition.

## II. Facts

The Tennessee Court of Criminal Appeals summarized the facts surrounding the challenged conviction in its post-conviction opinion:

> On the day in question, the petitioner went to the home of his ex-wife, the victim of the attempted murder. He had consumed a jar of moonshine and had also been taking Paxil, an anti-depressant. The petitioner stabbed his ex-wife in the chest with a kitchen knife, and she fled alone across the street to a neighbor's home. When the police arrived, the petitioner was holding a knife to his six-year-old son's neck. The police held the petitioner at gun-point until he released his son unharmed.
> A Greene County grand jury indicted the petitioner for especially aggravated kidnapping, attempted second degree murder, and aggravated burglary. Pursuant to a plea agreement, the petitioner pled guilty to the charges of attempted second degree murder and especially aggravated kidnapping in exchange for the state's dismissing the aggravated burglary charge. The petitioner also agreed to concurrent sentences of eight years at thirty percent for the attempted second degree murder and fifteen years at one hundred percent for the especially aggravated kidnapping.

*Melton v. State*, 2005 WL 2922320, *1.

## III. Discussion

In his application for a writ of habeas corpus, the petitioner asserts, as grounds for relief, that his guilty pleas were unknowing and involuntary and, thus, invalid; that he had ineffective assistance of counsel during the entry of his pleas; and that, even though the Court

of Criminal Appeals did not have a complete record and, therefore, did not review all the relevant facts, it, nonetheless, issued a ruling during his post-conviction case.

In his answer, the respondent maintains that the petitioner is not entitled to relief on his claims because they have been procedurally defaulted or because they have been determined in state court and, under the deferential review standards in 28 U.S.C. 2254(d), the resulting state court decision with respect to those adjudicated claims cannot be disturbed.

Each claim will be addressed in turn.

**A. Invalid guilty pleas.**

In this claim, the petitioner alleges that his guilty pleas were not knowing and voluntary because he either was not made aware of or did not understand the consequences of entering the pleas and because he was incompetent—a mental state induced by an anti-depressant medication he was taking. Thus, he contends, his pleas are constitutionally invalid.

1. *Lack of understanding of the consequences*: The Court assumes, as did the respondent, that the unidentified "consequence" to which the petitioner refers is the one-hundred percent release eligibility date attached to his sentence for aggravated kidnapping, which required him to serve his total 15-year prison term. The petitioner offered this claim to the post-conviction court, which found that, prior to the plea, counsel had explained fully and completely to the petitioner "what a hundred percent meant, that it meant the entire sentence," and that the petitioner "was simply not credible" when he testified that he did not

apprehend that one-hundred percent meant the entire sentence. [Add. No. 1, Judge Beckner's Memorandum and Order of January 26, 2005, at 5-6].

This issue was also addressed by the Court of Criminal Appeals, which observed that the record showed that, in the plea agreement itself and also at the guilty plea hearing, the petitioner acknowledged his sentence would be fifteen years at one-hundred percent. The state appellate court also pointed out that the petitioner's counsel had testified at the post-conviction hearing that his client had hesitated initially to plead guilty because he did not want to serve a 15-year prison sentence and that he had understood the terms of the agreement. Ultimately concluding that the plea had been voluntary, the state appeals court denied relief. *Melton v. State*, 2005 WL 2922320, *3, *5.

Pursuant to 28 U.S.C. § 2254(d), the writ of habeas corpus shall not be granted with respect to any claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." A presumption of correctness attaches to a state court's factual findings, *see* 28 U.S.C. § 2254(e)(1), and this presumption encompasses both explicit and implicit factual findings of both the trial and appellate courts. *Loveday v. Davis*, 697 F.2d 135, 139 (6th Cir. 1983).

As the state appellate court noted in its opinion, before accepting a guilty plea, a court is required, under *Boykin v. Alabama*, 395 U.S. 238 (1969), to determine whether a

4

defendant understands that he is waiving his right to a trial by jury, his right to confront the witnesses against him, and his privilege against self-incrimination. *Id.* at 243-44. Under the principles enunciated in *Boykin*, because a guilty plea involves the waiver of constitutional rights, the record must affirmatively show that a defendant who is pleading guilty understands that he is waiving those rights. *Id.* at 243. Whether a plea is voluntarily and intelligently entered depends upon the particular facts and circumstances of each case. *See Brady v. United States*, 397 U.S. 742, 749 (1979); *Johnson v. Zerbst*, 304 U.S. 458, 463 (1923). An accused must be sufficiently aware of the relevant circumstances, as well as the probable and direct consequences of his plea. *Brady*, 397 U.S. at 748; *see also Machibroda v. United States*, 368 U.S. 487, 493 (1962).

        The Court has reviewed the facts in this case, including the plea colloquy at the guilty plea hearing and the testimony given by the petitioner's trial attorney at the post-conviction hearing, and finds that, in light of the evidence presented during those proceedings, the state appellate court made reasonable factual determinations with respect to the plea—one of which was that the petitioner acknowledged in his responses at the plea hearing that he understood that his sentence for the kidnapping conviction would be 15-years at 100 percent. The ultimate conclusion of those state courts (i.e., that the petitioner's plea was constitutionally valid because it was entered knowingly and voluntarily) does not contravene, and is not an unreasonable application of, the governing legal rule in Supreme Court cases. The writ will not be granted with respect to this claim.

2. *Incompetence at the time of entry of the guilty pleas*: The petitioner contends, in this claim, that he was taking medication which rendered him incompetent to enter voluntary and knowing guilty pleas. Hence, according to him, the pleas are constitutionally infirm.

The respondent asserts in his answer that the petitioner did not raise this issue in the state appellate court. This Court has examined the petitioner's appellate brief, and it does not contain the same issue he has presented in his habeas petition. [Add. 3, at 5-6; Pet. at 6].

A habeas petitioner must exhaust his federal claims by offering them first to the state courts. 28 U.S.C. § 2254(b)(1)(A). Because the petitioner has not fairly presented his federal claim to the state courts for disposition, he has not exhausted it. *Picard v. Connor*, 404 U.S. 270, 275 (1971). Thus, any claim that his incompetence through medication renders his pleas constitutionally deficient has been procedurally defaulted, *see Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Reed v. Ross,* 468 U.S. 1 (1984), and may not now be considered unless the petitioner can show cause and prejudice for his failure to raise the issue in state court or that a fundamental miscarriage of justice will result if the claim is not reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 87, 90-91 (1977). He has made no such showing and federal review of this issue is now barred by his procedural default.

6

**B. Ineffective assistance of counsel**.

According to the petitioner's allegations, his retained attorney gave him ineffective assistance by failing to investigate the case and by relying, instead, on the prosecution's evidence and records; by failing to investigate and call witnesses on his behalf; and by failing to develop any type of defense, specifically one predicated on the petitioner's mental condition and his problem with Paxil, his anti-depressant medication. The respondent argues that this claim is conclusory and does not satisfy the pleading requirements of Rule 2 of the Rules Governing Section 2254 Cases.

Under Rule 2(c), Section 2254 Rules, a habeas corpus petitioner must "specify all the grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified." To be entitled to habeas corpus relief, a petitioner must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Section 2254 Rules). A bald, conclusory claim, not supported by facts, will not entitle a petitioner to habeas corpus relief. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991).

With the possible exception of the last allegation, the respondent is correct. The petitioner has not indicated what evidence should have been investigated; identified the witnesses who should have been interviewed and called to testify; or related the testimony

which the witnesses purportedly would have given. Therefore, these claims are conclusory and cannot serve as a basis for a writ.

The last allegation concerning counsel's failure to develop and present defenses was entertained by the state courts on collateral review. At the post-conviction hearing, the petitioner's attorney testified that he had advised his client that, even if the medication had caused him to suffer adverse effects, his voluntary consumption of a jar of moonshine prior to the crimes practically eliminated the Paxil defense since voluntary intoxication was not a defense under Tennessee law. *Melton v. State*, 2005 WL 2922320, *3. Counsel further stated that, while the petitioner had never requested a mental evaluation and while counsel would have advanced any potential mental defense on behalf of his client, none of the defenses applied, given the petitioner's consumption of the intoxicant. *Id*.

The Court of Criminal Appeals, when presented with this claim during the post-conviction appeal, found no deficient performance, but only after noting counsel's testimony that he had examined the possibility of offering a mental defense but had resolved that this type of defense would not be viable, in view of the petitioner's consumption of a jar of moonshine. *Melton v. State*, 2005 WL 2922320, *3.

The seminal case for evaluating an ineffectiveness claim is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong test for judging ineffectiveness claims. It held that, to establish ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second,

8

that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Id.* at 693. To demonstrate deficient performance, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 688, 693-94. A reviewing court's scrutiny of counsel's performance is highly deferential and it must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonably professional assistance." *Id*. at 689. To show prejudice, in a guilty plea context, a petitioner must demonstrate that there is a reasonable probability that, but for his attorney's unprofessional errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Id.* at 59.

When the petitioner raised his claim in the Tennessee Court of Criminal Appeals, that court cited to *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1995),[1] to *Strickland,* and to *Hill*, before going on to find that the petitioner had not demonstrated that his counsel's performance was constitutionally deficient.

As noted, this Court can grant relief only if the state court's decision with respect to the claim was contrary to, or an unreasonable application of, the governing

---

[1] In *Baxter*, the Tennessee Supreme Court held that a defendant who claims ineffective assistance must show that counsel's advice or services fell below the range of competence demanded of attorneys in criminal cases. *Baxter*'s analysis is the equivalent of the performance-prong of the *Strickland* test.

9

Supreme Court precedent or an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The state court's decision is not contrary to the controlling rule in a Supreme Court case because it examined this claim under *Strickland* and *Hill*. Thus, the question is whether it was it an unreasonable application of *Strickland* for the state court to decide that there was no deficiency of performance with respect to this issue.

It was not. Obviously, the trial court accredited the petitioner's counsel, who testified that he investigated the petitioner's Paxil defense and could find no defense that applied to the case. The state court record contains nothing to show that counsel's decision not to advance a Paxil defense, which was based on his conclusion that the petitioner's consumption of a jar of moonshine all but negated that defense, fell below an objective standard of reasonableness. *United States v. Cronic*, 466 U.S., 648, 656, n. 19 (1984) ("Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one ....").[2]

---

[2] Intoxication resulting from medication prescribed by one's physician is considered to be involuntary. Hafetz "*Mens Re: State of Mind Defenses in Criminal and Civil Fraud Cases*," 140 PLI/Crim 9, 15 (Dec. 16, 1985) (available on WESTLAW). Under Tennessee law, involuntary intoxication is a defense to criminal prosecution, but only "if, as a result of the involuntary intoxication, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of the law." *See* Tenn. Code Ann. § 39-11-503(c). Evidence showing beyond a reasonable doubt that the intoxication was voluntary, *see* Tenn. Code. Ann. § 39-11-503 (a) (voluntary intoxication is not a defense), will refute such a defense. *See* 7 Tenn. Practice, Tenn. Pattern Jury Inst.- Crim. 40:02 (2005). Since voluntary intoxication means intoxication caused by a substance that the person knowingly introduced into his body, the tendency of which to cause intoxication was known or ought to
(continued...)

The finding of "no deficient performance" was not an objectively unreasonable application of Supreme Court law by the state court. *See Lockhart v. Fretwell*, 506 U.S. 364, 382 (1993) ("In other words, ineffective-assistance claims predicated on failure to make wholly frivolous or unethical arguments will generally be dispensed with under *Strickland*'s first prong, without recourse to the second."). Accordingly, the writ will not issue with respect to this claim.

**C. Incomplete record on post-conviction appeal**.

The petitioner asserts that the Tennessee Court of Criminal Appeals decided his case without a complete record and that, absent a whole record, it could not have reviewed the relevant facts. The respondent counters that this claim is conclusory and that it also has been procedurally defaulted. The petitioner admits that he is raising this issue for the first time. However, as his claim of cause, he contends that his claim arose during the appeal and that his appointed attorney failed to assert the alleged due process violation in the application for permission to appeal in the Tennessee Supreme Court.

---

[2](...continued)
have been known, *see id.*; Tenn. Code Ann. § 39-11-503(d)(3), and since the petitioner admitted that he had consumed a jar of moonshine prior to the charged offenses, his admission most likely would have doomed any potential Paxil defense. *See State v. Kain*, 24 S.W.3d 816 (Tenn.Crim.App.2000) (under statute stating intoxication is voluntary rather than involuntary if defendant took substance "the tendency of which to cause intoxication was known or ought to have been known," the defendant was properly denied an involuntary intoxication defense where he ingested alcohol and prescription drugs at about the same time).

11

This claim fails, but not based on a procedural default. The petitioner's contention concerning the state court's errors in dismissing his post-conviction appeal without a complete record is not a cognizable habeas corpus claim.[3] *See Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (finding claims concerning supposed constitutional violations during post-conviction proceedings did not involve prisoner's detention and, therefore, were not cognizable under § 2254).

### IV. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should the petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. A petitioner whose claims have been rejected on a procedural basis satisfies the requirements of § 2253(c) by showing that reasonable jurists would debate the correctness of the Court's procedural rulings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Id*.

---

[3] Since the procedural default doctrine applies only where a petitioner fails to offer the state courts an opportunity to correct a constitutional error and since this particular claim does not involve constitutional error (despite the petitioner's effort to characterize it as such), *see Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) (no constitutional requirement that states provide for post-conviction relief), the procedural default defense is not applicable.

The Court has individually assessed the petitioner's claims under the relevant standards and finds those claims do not deserve to proceed further because jurists of reason would not conclude that the disposition of those claims or the procedural rulings were debatable or wrong. Since the petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

## V. Conclusion

The Court will **DISMISS** this case because the claims have been procedurally defaulted; do not entitle the petitioner to habeas corpus relief; or are not cognizable. Furthermore, the Court **WILL NOT ISSUE** a COA.

A separate order will enter.

ENTER:

    s/ Leon Jordan
United States District Judge

13

Case 2:06-cv-00055   Document 10   Filed 08/28/06   Page 13 of 13   PageID #: 13